IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALTON D. BROWN, DL-4686,  )
    Plaintiff,  )
                              )
    v.  )  Civil Action No. 03-289
                              )
PA. DEPARTMENT OF CORRECTIONS,  )
et al.,  )
    Defendants.  )

I. Recommendation:

It is respectfully recommended that Corrections Defendants' Motion for Summary Judgment (Docket No.156) be granted.

II. Report:

Presently before the Court for disposition is a Motion for Summary Judgment submitted on behalf of defendants Jeffrey A. Beard, Robert S. Bitner, Thomas L. James, Martin Horn, Philip L. Johnson, Joel S. Dickson, Mark A. Krysevig, William S. Stickman, Frank Cole, Anthony Bovo, Rebecca Kessler, Gregg Mohring, Robert Stafford, David McCoy, Robert Frank, Gary Abrams, John Novak, Randy Minnick, G.K. Marsh, Josh Orpen, Mark Powell, Joan Delie, Diana Manson, and Gregory S. Kime (collectively "the Corrections defendants").

Alton D. Brown, who was formerly an inmate at the State Correctional Institution at Pittsburgh ("SCIP") and is now housed at the State Correctional Institution at Fayette, has filed a third amended civil rights complaint which he has been granted leave to prosecute without prepayment of costs against the Pennsylvania Department of Corrections and several officials of

that department as well as officials at SCIP and medical treating personnel at the institution.[1]

In addition to the Pennsylvania Department of Corrections[2], in the third amended complaint the plaintiff names as individual defendants, the Corrections defendants, as well as Dr. Ravindranath Kolli, P.A. Dumas, Paul Noel and Edward V. Swierczewski (collectively "the medical defendants").

In his complaint, the plaintiff alleges that he was housed in the Long Term Segregation Unit ("LTSU") at SCIP on April 26, 2000; that conditions in the LTSU were deplorable and several times wastewater seeped into his cell and remained there for days at a time; that he was denied showers, clean clothes and bedding; that he was forced to live in unsanitary, unhealthy quarters and was exposed to other inmates with communicable diseases; that after being housed in the LTSU, he was diagnosed with Hepatitis C; that he received false misconduct reports, was deprived of his legal materials, was assaulted by SCIP personnel and was subjected to psychological abuse in retaliation for his litigious conduct; that as an African American he experienced racial discrimination; that he was denied religious publications and newspapers, and that medical personnel at SCIP failed to properly treat his injuries. These facts are said to state a cause of action under the provisions of 42 U.S.C. 1983 and the plaintiff invokes this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28 United States Code. The Corrections Defendants now move for summary judgment.

---

[1] This litigation was commenced in the Court of Common Pleas of Cumberland County, Pennsylvania, where in forma pauperis status was granted and subsequently removed to this Court on January 29, 2003.

[2] On appeal the Court of Appeals affirmed our dismissal of the Pennsylvania Department of Corrections as a defendant in this action.

In an attempt to instill some modicum of clarity to the rambling three hundred numbered paragraph complaint, we have attempted to distill the plaintiff's complaints to set forth the salient allegations. The plaintiff complains that Beard and Horn as administrators are responsible for inmate assignments to the LTSU (¶ 8); that Johnson, Dickson, Kessler and Bovo failed to assure that the plaintiff received due process in conjunction with his housing assignment (¶ 9); that Johnson, Bitner, James, Dickson, Stickman, Krysevig. Cole, Bovo, McCoy, Kessler, Frank, Abrams, Novak, Mohring, Stafford, Minnick, Delie, Manson, Kolli, Noel and Swierczewski are LTSU staff members (¶ 12); that Horn and Beard decided to subject minorities to experimental treatments in the LTSU (¶ 17); that on June 14, 2000 Bovo assaulted the plaintiff without provocation (¶ ¶ 26,27); that Horn, Beard, Johnson, Stickman, Dickson, Cole and Kessler know of Bovo's behavior and tolerate it (¶ 34); that Delie, Manson, Noel and Swierczewski have a duty to assure that plaintiff receives adequate medical treatment (¶ 39); that plaintiff was exposed to blood and body waste from other inmates due to cell flooding (¶ ¶ 55, 62,63,64); that he was placed in a cell next to an undesirable inmate by Abrams, Mohring, Bovo and Novak (¶ 65,67,68); that he contracted hepatitis C (¶ 69); that Bovo, Mohring, Stafford, Novak, Abrams and Frank refused to move him from a noisy cell area (¶ 74); that Beard, Horn, Johnson, Dickson, Stickman, Krysevig, Cole, Kessler, Mohring, Stafford, Kolli, Swierczewski, Noel and Delie tolerate noise in the LTSU as a means of behavior modification; that Delie, Manson, Philips, Kessler, Kolli, Horn, Beard, Noel, Dumas and Swierczewski denied the plaintiff's request for earplugs on security grounds (¶ 88, 91); that Kolli, Noel, Swierczewski, Dumas, and Delie should have referred him to an ear specialist (¶ 89); that Delie, Manson, Philips, Kessler, Kolli, Horn, Beard, Noel, Dumas and Swierczewski had a duty to assure that he received

adequate medical treatment (¶ 90); that Delie, Manson and Dumas owed him prudent medical care (¶ 92); that Delie, Kolli, Noel, Swierczewski and Dumas had a duty to provide the plaintiff with complete medical testing (¶ 93); that Mohring and Abrams placed him in an undesirable cell due to his litigious behavior (¶ 96); that Horn, Beard, Johnson, Bovo, Mohring, Dickson and Stickman denied his receipt of the Christian Science Monitor which he regards as a religious publication (¶ 100) and that Beard, Horn, Johnson, Dickson, Stickman, Mohring, Stafford and Frank implemented a policy prohibiting inmates from having newspapers in the LTSU (¶ 105).

The plaintiff also contends that on February 7, 2002 a defendant smashed his head into a wall (¶ 109); that the assault was planned by Stafford, Minnick, Frank and Marsh for his refusal to participate in an LTSU experimental program and in retaliation for his litigation (¶ 110,114); that while his cell was searched, Marsh applied excessive force on his handcuffs causing him to experience pain (¶ 122); that when he was returned to his cell he was pushed into a wall and then punched by Minnick, Frank and Marsh (¶ 126); that his handcuffs were pulled by Minnick and Marsh (¶ 128) and that as a result, he suffered serious injuries (¶ 133).

Additionally, the plaintiff contends that on February 6, 2002, he was placed in more restrictive housing by Orpen and Powell for a period of fourteen days as a punitive measure (¶ 139, 140); that Johnson, Dickson, Mohring and Stafford permitted this housing for punishment and in retaliation (¶ 141,145); that he was denied food and water by Frank, Abrams, Mohring and Stafford (¶ 144) that Minnick, Orpen, Stafford, Powell and Mohring searched his legal materials which were in the property room (¶ 256); that Minnick refused to give him adequate time to gather the legal materials he needed to work on (¶ 258); that Beard, James, Johnson, Mohring and Stafford refused his request for adequate additional time to secure his necessary legal

4

materials (¶ 260) and that this prevented him from participating in his court proceeding (¶ 264).

The plaintiff further alleges that on February 8, 2002 Stafford placed him in restrains for punitive and retaliative purposes (¶ 150,166).

It is also contended that on February 11, 2002, Orpen ordered the plaintiff's mattress removed for a three day period (¶ 168) and that Beard, Horn, Johnson, Stickman, Dickson, Krysevig, Kessler, Cole and James are aware of this practice and support it (¶ 175).

The plaintiff also contends that on February 11, 2002, Orpen improperly touched him (¶ 182) and that Beard, Johnson, James, Dickson and Kessler refused to investigate the incident (¶ 185).

Additionally, the plaintiff alleges that on February 21, 2002, Johnson, Dickson, Stafford and Mohring placed him in a barren cell for a period of fifty-two days as a punishment and retaliation (¶ 190); that on February 25, 2002, Johnson restricted the plaintiff from filing grievances due to alleged abuse of the grievance system by him (¶ 198); that on February 8, 2002, Kime tried to cover-up plaintiff's injuries and handled him roughly and refused to call a doctor (¶ 206); that on February 9, 2002, he was examined by Swierczewski through the cell door and he refused to provide adequate medical care to the plaintiff (¶ 214); that Swierczewski, Noel and Delie failed to call a qualified medical doctor to treat the plaintiff and delayed having his injuries x-rayed (¶ 218, 219); that after receiving notice of this matter, Johnson, Beard, James and Kessler refused to intervene (¶ 221); that after being informed that he had hepatitis C, plaintiff requested further medical information about the disease and Delie, Noel, Manson and Swierczewski failed to provide it (¶¶ 232-235,238,239); that Johnson and James refused to intervene in this denial (¶ 236); that on April 9, 2002 a dentist removed his dentures but refused to place him on a soft diet

5

(¶ 242); that Manson, Delie, Noel, Johnson and James refused to secure a soft diet for him (¶ 239); that on February 22, 2002, he was placed in a filthy hospital cell due to dehydration and his failure to eat for fourteen days which was an effort on his part to be brought before the court (¶ 245).

He also alleges that Horn, Beard, James and Johnson have implemented a policy of not providing free photo-copy service to indigent prisoners and he had to make his copies by hand (¶¶ 268-269); that Beard, James, Johnson, Kessler, Mohring and Stafford have implemented a policy of permitting only one box of legal materials in a cell, and that this was inadequate since the plaintiff had over twenty cases pending in the Pennsylvania courts (¶¶ 279-280); that inmates are limited by a policy imposed by Beard, Horn, James, Johnson, Kessler, Mohring and Stafford which permits only a $10/month postage advance, 100 sheets of free paper and ten free envelopes a month (¶¶ 286-287); that Beard, James, Johnson, Dickson, Mohring, Stafford, Kessler and Frank have enforced practices of openly reading, destroying, confiscating and copying his legal mail and files (¶ 291); that Orpen and Minnick are permitted to confiscate legal materials from stored property (¶ 295) and that Frank, Stafford, Minnick, Orper and Marsh have read and copied his incoming legal materials (¶ 298).

We observe that the voluminous rambling scatter-gun approach employed by the plaintiff in this action merely reflects his dissatisfaction with the correctional system, and should not be regarded as an indictment of the penal system as the plaintiff would have us conclude. Of his numerous complaints, we note that those which might be of some substance are his claim that on June 14, 2000 he was assaulted by Bovo (¶¶ 26,27); that on February 6, 2002 he was denied food and water by Frank, Abrams, Mohring and Stafford (¶ 144); that on February 7, 2002 he was

6

assaulted at the direction of Stafford, Minnick, Frank and Marsh (¶¶ 110,114,122,126,128); that on February 8, 2002 Stafford placed him in restraints and Kime improperly roughed him up (¶¶ 150,166,206); that on February 9, 2002, Swierczewski, Noel and Delie refused to provide him with adequate medical treatment (¶¶ 218,219) and that on February 11, 2002 he was improperly touched by Orpen (¶ 182).

Historically, it should be noted that on February 25, 2004, this Court dismissed the complaint. However, on appeal, the dismissal was reversed and the matter was remanded with specific instructions.[3] In its Opinion, the Court of Appeals observed that all individual incidents occurring over two years prior to the filing of the complaint were time barred with the exception of the plaintiff's claims of conditions in the LTSU which it concluded state an ongoing violation. Since the original complaint was executed prior to November 2, 2002. All individual incidents which occurred prior to November 2, 2000, are accordingly time barred. Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir.1993). The Court of Appeals also affirmed the dismissal of the Pennsylvania Department of Corrections as a defendant because it is not a "person" within the contemplation of § 1983.

Summary judgment is appropriate where there are no material issue of fact and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the matter raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. Orsetti v. New Jersey, 71 F.3d 480 (3d Cir.1995).

---

[3] Brown v. PA. Department of Corrections, et al., United States Court of Appeals for the Third Circuit Docket No. 04-1625, file document No. 94 reversing the dismissal for violation of Rule 8, F.R.Civ.P..

Initially, the movants claim that the plaintiff's in forma pauperis status should be revoked since he has violated the three strikes rule of the Prison Litigation Reform Act. Indeed this Court as well as the United States Court of Appeals for the Third Circuit have denied Brown in forma pauperis status as a result of his having abused the privilege of that status.[4] However, this litigation was not commenced in the federal district court but rather Brown, like other inmates seeking to circumvent the three strikes rule commenced it in the state court system where forma pauperis status was granted. The defendants then removed the action to this Court so that this Court never ruled on Brown's application for leave to proceed in forma pauperis. However, in their brief, the movants also observe that Brown has been denied leave to proceed in forma pauperis in the state courts, for having violated the analogous state rule. Brown v. James, 822 A.2d 128 (Pa.Cmwlth.2003). Thus, it would appear that prior to paying the filing fee and removing this action, the movants would have been well advised to raise this issue in the state courts rather than here in their motion for summary judgment. Nevertheless, it would appear that the decisions to deny Brown leave to proceed in forma pauperis were made subsequent to his filing of the instant case, and therefore, those determinations are not relevant here. At this juncture, however, it appear a bit disingenuous for the movants to seek revocation of the plaintiff's in forma pauperis status. That permission was granted in the Court of Common Pleas and should have been address there since the defendants only have themselves to fault for commencing the action in this Court. Thus, we turn to the merits of the present motion.

The next issue which the movants raise, is that this suit is not viable against the

---

[4] See: W.D.Pa. Docket 04-1906 and United States Court of Appeals for the Third Circuit Docket No. 03-4081.

Pennsylvania Department of Corrections since it is not a "person" within the contemplation of § 1983. We need not address this issue since this Court as well as the Court of Appeals has dismissed the Department of Corrections as a defendant in this action.

The next claim which the movants make is that the plaintiff has failed to state a claim against defendants Beard, Horn, Johnson, Dickson, Krysevig, Stickman, James and Bittner in that he has failed to allege any personal involvement of these defendants in the acts about which he complains. Thus, any liability against them must be premised on a theory of respondeat superior, a concept which does not support §1983 liability. C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198 (3d Cir.2000), cert. denied 533 U.S. 915 (2001). For this reason, suit cannot be maintained against them.

The next issue which the movants address is that the issue of his placement in the LTSU has been previously litigated and decided adversely to the plaintiff. Brown v. Blaine, 833 A.2d 1166 (Pa.Cmwlth.2003). In that decision, the Court relying on Sandin v. Conner, 515 U.S. 472 (1995) determined that the plaintiff's confinement in the LTSU was not an atypical condition of confinement and did not violate a protected liberty interest. That decision, is binding here. Edmundson v. Borough of Kennett Square, 4 F.3d 186 (3d Cir.1993). Thus, the fact of his confinement in the LTSU cannot be relitigated here.

In addition to having litigated his placement in the LTSU in the state court proceedings, the plaintiff should have raised those issues occurring in February, 2002 which arose as a consequence of that placement in the same proceeding since they involved the same individuals and events. Board v. Centra, 983 F.2d 495 (3d Cir.1992). This he failed to do. For this reason, further litigation is barred here.

Brown also appears to object to his continued housing in the LTSU. As previously observed, such housing is not such an atypical condition of confinement as to give rise to a civil rights violation. <u>Sandin v. Connor</u>, <u>supra</u>.[5] In order to prevail on his claim that the Corrections defendants ignored his medical needs, the plaintiff must demonstrate that they exhibited deliberate indifference to a serious medical need of the plaintiff's thereby exposing him to an excessive health risk <u>Nicini v. Morra</u>, 212 F.3d 798 (3d Cir.2000). Claims of negligence or even medical malpractice without some more culpable state of mind do not rise to this level. <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999). No such showing is made here.

Brown also contends that in denying him access to the <u>Christian Science Monitor</u> the movants where denying him access to religious materials. Other than its name, there is nothing in the publication which demonstrates that it is a religious publication. Even its own website makes such a disclaimer.[6] Thus, there is no validity to Brown's allegation that he is being denied access to religious materials.

Thus, while Brown is unhappy with his prison placement, he has had more than ample opportunity to explore this matter and in the present action appears to merely be seeking to rehash prior adverse determination. Because there are no matters regarding the actions of the Correctional Defendants which need be explored here, and because it appears as a matter of law that they are entitled to judgment, it is recommended that the Correctional Defendants' motion for summary judgment be granted.

---

[5] A thorough and informative discussion of the LTHU as well as a discussion of its legality appears in <u>Rivera v. Pennsylvania</u>, 837 A.2d 525 (Pa.Super.2003).

[6] In its own website, the <u>Christian Science Monitor</u> declares that it is not a religious publication but rather a newspaper dedicated to reporting news items, csmonitor.com.

Within ten (10) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/Robert C. Mitchell,

Entered: November 14, 2005                 United States Magistrate Judge