IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALTON D. BROWN, DL-4686,        )
      Plaintiff,             )
                         )
        v.               )    Civil Action No. 03-289
                         )
PA. DEPARTMENT OF CORRECTIONS,  )
et al.,                    )
      Defendants.          )

I. Recommendation:

It is respectfully recommended that the Motion for Summary Judgment submitted on

behalf of defendants Noel, Kolli, Swierczewski and Dumas (Docket No.207) be granted and that

judgment be entered accordingly.

II. Report:

Presently before the Court for disposition is a Motion for Summary Judgment submitted

on behalf of defendants Noel, Kolli, Swierczewski and Dumas.

Alton D. Brown, who was formerly an inmate at the State Correctional Institution at

Pittsburgh ("SCIP") and is now housed at the State Correctional Institution at Graterford, has

filed a third amended civil rights complaint which he has been granted leave to prosecute without

prepayment of costs against the Pennsylvania Department of Corrections and several officials of

that department as well as officials at SCIP and medical treating personnel at the institution.[1]

---

[1] This litigation was commenced in the Court of Common Pleas of Cumberland County, Pennsylvania, where in forma pauperis status was granted and subsequently removed to this Court on January 29, 2003.

In addition to the Pennsylvania Department of Corrections[2], in the third amended complaint the plaintiff names as individual defendants, the Corrections defendants, as well as Dr. Ravindranath Kolli, P.A. Dumas, Paul Noel and Edward V. Swierczewski (collectively "the medical defendants").

In his complaint, the plaintiff alleges that he was housed in the Long Term Segregation Unit ("LTSU") at SCIP on April 26, 2000; that conditions in the LTSU were deplorable and several times wastewater seeped into his cell and remained there for days at a time; that he was denied showers, clean clothes and bedding; that he was forced to live in unsanitary, unhealthy quarters and was exposed to other inmates with communicable diseases; that after being housed in the LTSU, he was diagnosed with Hepatitis C; that he received false misconduct reports, was deprived of his legal materials, was assaulted by SCIP personnel and was subjected to psychological abuse in retaliation for his litigious conduct; that as an African American he experienced racial discrimination; that he was denied religious publications and newspapers, and that medical personnel at SCIP failed to properly treat his injuries. These facts are said to state a cause of action under the provisions of 42 U.S.C. 1983 and the plaintiff invokes this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28 United States Code. Summary judgment was granted as to the Corrections Defendants and now the remaining defendants who are the medical defendants move for summary judgment.[3]

In an attempt to instill some modicum of clarity to the rambling three hundred numbered

---

[2] On appeal the Court of Appeals affirmed our dismissal of the Pennsylvania Department of Corrections as a defendant in this action.

[3] See: Docket Nos. 194 and 195

paragraph complaint, we have attempted to distill the plaintiff's complaints to set forth the salient allegations. The plaintiff complains that Beard and Horn as administrators are responsible for inmate assignments to the LTSU (¶ 8); that Johnson, Dickson, Kessler and Bovo failed to assure that the plaintiff received due process in conjunction with his housing assignment (¶ 9); that Johnson, Bitner, James, Dickson, Stickman, Krysevig. Cole, Bovo, McCoy, Kessler, Frank, Abrams, Novak, Mohring, Stafford, Minnick, Delie, Manson, Kolli, Noel and Swierczewski are LTSU staff members (¶ 12); that Horn and Beard decided to subject minorities to experimental treatments in the LTSU (¶ 17); that on June 14, 2000 Bovo assaulted the plaintiff without provocation (¶ ¶ 26,27); that Horn, Beard, Johnson, Stickman, Dickson, Cole and Kessler knew of Bovo's behavior and tolerated it (¶ 34); that Delie, Manson, Noel and Swierczewski have a duty to assure that plaintiff receives adequate medical treatment (¶ 39); that plaintiff was exposed to blood and body waste from other inmates due to cell flooding (¶ ¶ 55, 62,63,64); that he was placed in a cell next to an undesirable inmate by Abrams, Mohring, Bovo and Novak (¶ 65,67,68); that he contracted hepatitis C (¶ 69); that Bovo, Mohring, Stafford, Novak, Abrams and Frank refused to move him from a noisy cell area (¶ 74); that Beard, Horn, Johnson, Dickson, Stickman, Krysevig, Cole, Kessler, Mohring, Stafford, Kolli, Swierczewski, Noel and Delie tolerate noise in the LTSU as a means of behavior modification; that Delie, Manson, Philips, Kessler, Kolli, Horn, Beard, Noel, Dumas and Swierczewski denied the plaintiff's request for earplugs on security grounds (¶ 88, 91); that Kolli, Noel, Swierczewski, Dumas, and Delie should have referred him to an ear specialist (¶ 89); that Delie, Manson, Philips, Kessler, Kolli, Horn, Beard, Noel, Dumas and Swierczewski had a duty to assure that he received adequate medical treatment (¶ 90); that Delie, Manson and Dumas owed him prudent medical

care (¶ 92); that Delie, Kolli, Noel, Swierczewski and Dumas had a duty to provide the plaintiff with complete medical testing (¶ 93); that Mohring and Abrams placed him in an undesirable cell due to his litigious behavior (¶ 96); that Horn, Beard, Johnson, Bovo, Mohring, Dickson and Stickman denied his receipt of the Christian Science Monitor which he regards as a religious publication (¶ 100) and that Beard, Horn, Johnson, Dickson, Stickman, Mohring, Stafford and Frank implemented a policy prohibiting inmates from having newspapers in the LTSU (¶ 105).

The plaintiff also contends that on February 7, 2002 a defendant smashed his head into a wall (¶ 109); that the assault was planned by Stafford, Minnick, Frank and Marsh for his refusal to participate in an LTSU experimental program and in retaliation for his litigation (¶ 110,114); that while his cell was searched, Marsh applied excessive force on his handcuffs causing him to experience pain (¶ 122); that when he was returned to his cell he was pushed into a wall and then punched by Minnick, Frank and Marsh (¶ 126); that his handcuffs were pulled by Minnick and Marsh (¶ 128) and that as a result, he suffered serious injuries (¶ 133).

Additionally, the plaintiff contends that on February 6, 2002, he was placed in more restrictive housing by Orpen and Powell for a period of fourteen days as a punitive measure (¶ 139, 140); that Johnson, Dickson, Mohring and Stafford permitted this housing for punishment and in retaliation (¶ 141,145); that he was denied food and water by Frank, Abrams, Mohring and Stafford (¶ 144); that Minnick, Orpen, Stafford, Powell and Mohring searched his legal materials which were in the property room (¶ 256); that Minnick refused to give him adequate time to gather the legal materials he needed to work on (¶ 258); that Beard, James, Johnson, Mohring and Stafford refused his request for adequate additional time to secure his necessary legal materials (¶ 260) and that this prevented him from participating in his court proceedings (¶ 264).

4

The plaintiff further alleges that on February 8, 2002 Stafford placed him in restrains for punitive and retaliative purposes (¶ 150,166).

It is also contended that on February 11, 2002, Orpen ordered the plaintiff's mattress removed for a three day period (¶ 168) and that Beard, Horn, Johnson, Stickman, Dickson, Krysevig, Kessler, Cole and James are aware of this practice and support it (¶ 175).

The plaintiff also contends that on February 11, 2002, Orpen improperly touched him (¶ 182) and that Beard, Johnson, James, Dickson and Kessler refused to investigate the incident (¶ 185).

Additionally, the plaintiff alleges that on February 21, 2002, Johnson, Dickson, Stafford and Mohring placed him in a barren cell for a period of fifty-two days as a punishment and retaliation (¶ 190); that on February 25, 2002, Johnson restricted the plaintiff from filing grievances due to alleged abuse of the grievance system by him (¶ 198); that on February 8, 2002, Kime tried to cover-up plaintiff's injuries and handled him roughly and refused to call a doctor (¶ 206); that on February 9, 2002, he was examined by Swierczewski through the cell door and he refused to provide adequate medical care to the plaintiff (¶ 214); that Swierczewski, Noel and Delie failed to call a qualified medical doctor to treat the plaintiff and delayed having his injuries x-rayed (¶ 218, 219); that after receiving notice of this matter, Johnson, Beard, James and Kessler refused to intervene (¶ 221); that after being informed that he had hepatitis C, plaintiff requested further medical information about the disease and Delie, Noel, Manson and Swierczewski failed to provide it (¶¶ 232-235,238,239); that Johnson and James refused to intervene in this denial (¶ 236); that on April 9, 2002 a dentist removed his dentures but refused to place him on a soft diet (¶ 242); that Manson, Delie, Noel, Johnson and James refused to secure a soft diet for him (¶

239); that on February 22, 2002, he was placed in a filthy hospital cell due to dehydration and his failure to eat for fourteen days which was an effort on his part to be brought before the court (¶ 245).

He also alleges that Horn, Beard, James and Johnson have implemented a policy of not providing free photo-copy service to indigent prisoners and he had to make his copies by hand (¶¶ 268-269); that Beard, James, Johnson, Kessler, Mohring and Stafford have implemented a policy of permitting only one box of legal materials in a cell, and that this was inadequate since the plaintiff had over twenty cases pending in the Pennsylvania courts (¶¶ 279-280); that inmates are limited by a policy imposed by Beard, Horn, James, Johnson, Kessler, Mohring and Stafford which permits only a $10/month postage advance, 100 sheets of free paper and ten free envelopes a month (¶¶ 286-287); that Beard, James, Johnson, Dickson, Mohring, Stafford, Kessler and Frank have enforced practices of openly reading, destroying, confiscating and copying his legal mail and files (¶ 291); that Orpen and Minnick are permitted to confiscate legal materials from stored property (¶ 295) and that Frank, Stafford, Minnick, Orper and Marsh have read and copied his incoming legal materials (¶ 298).

We observe that the voluminous rambling scatter-gun approach employed by the plaintiff in this action merely reflects his dissatisfaction with the correctional system, and should not be regarded as an indictment of the penal system as the plaintiff would have us conclude. Of his numerous complaints, we note that those which might be of some substance are his claim that on June 14, 2000 he was assaulted by Bovo (¶¶ 26,27); that on February 6, 2002 he was denied food and water by Frank, Abrams, Mohring and Stafford (¶ 144); that on February 7, 2002 he was assaulted at the direction of Stafford, Minnick, Frank and Marsh (¶¶ 110,114,122,126,128); that

6

on February 8, 2002 Stafford placed him in restraints and Kime improperly roughed him up (¶¶ 150,166,206); that on February 9, 2002, Swierczewski, Noel and Delie refused to provide him with adequate medical treatment (¶¶ 218,219) and that on February 11, 2002 he was improperly touched by Orpen (¶ 182).

Historically, it should be noted that on February 25, 2004, this Court dismissed the complaint. However, on appeal, the dismissal was reversed and the matter was remanded with specific instructions. [4]  In its Opinion, the Court of Appeals observed that all individual incidents occurring over two years prior to the filing of the complaint were time barred with the exception of the plaintiff's claims of conditions in the LTSU which it concluded state an ongoing violation. Since the original complaint was executed prior to November 2, 2002, all individual incidents which occurred prior to November 2, 2000, are accordingly time barred. Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir.1993). The Court of Appeals also affirmed the dismissal of the Pennsylvania Department of Corrections as a defendant because it is not a "person" within the contemplation of § 1983.

Thus, the only remaining issue is that concerning the alleged refusal of the movants to provide him with adequate medical treatment on February 9, 2002 (¶¶ 218, 219).   In order to prevail on his claim, the plaintiff must demonstrate that the defendants exhibited deliberate indifference to a serious medical need of the plaintiff's thereby exposing him to an excessive health risk Nicini v. Morra, 212 F.3d 798 (3d Cir.2000). Claims of negligence or even medical malpractice without some more culpable state of mind do  not rise to this level. Rouse v. Plantier,

---

[4] Brown v. PA. Department of Corrections, et al., United States Court of Appeals for the Third Circuit Docket No. 04-1625, file document No. 94 reversing the dismissal for violation of Rule 8, F.R.Civ.P..

182 F.3d 192 (3d Cir. 1999).

Appended as Exhibit "A" to their motion to dismiss, the movants have provided the affidavit of Dr. Paul Noel, the State Medical Director for Prison Health Services, Inc. who based on this Court's prior determination limited his testimony to events which occurred on or after November 2, 2000. His review of the plaintiff's institutional medical records demonstrates that during the relevant time period, the plaintiff consulted with medical personnel on over two dozen occasions and that additionally during the period from February 11, 2002 through February 26, 2002, as a result of a self-imposed hunger strike the plaintiff was seen by medical personnel on a daily basis and that on at least three occasions the plaintiff refused medical treatment. Finally, the affidavit demonstrates that no acute medical conditions were ever discovered, and that any conditions which required medical treatment were addressed.

In response, the plaintiff has again submitted a rambling document which contains his opinion that his civil rights were violated, but nothing that supports those allegations, nor anything that counters the movants' submissions. Indeed, his submissions demonstrate that he received an abundance of medical treatment.

Summary judgment is appropriate where there are no material issue of fact and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the matter raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. Orsetti v. New Jersey, 71 F.3d 480 (3d Cir.1995). Accordingly, he has failed to sustain his burden.

While the plaintiff might not be satisfied with the medical treatment he has received, it is

also apparent that he was provided with abundant treatment for those conditions which warranted treatment. Thus, he has failed to demonstrate that the movants exhibited deliberate indifference of a serious medical need of his, and their motion for summary judgment should be granted and judgment entered accordingly.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge

Entered:   July 26, 2006